MARVIN ANDERSON ET AL v. PAINTERS LOCAL UNION NO. 318 ET AL.

No. A-7686. Decided July 13, 1960.
Rehearing Overruled October 5, 1960.
(338 S.W. 2d Series 148)

130

*Ernest May,* of Fort Worth, for Petitioners, Anderson et al.

The Court of Civil Appeals and the trial court both erred in holding that petitioners must wait 3 years after their suspension until the general convention had met and adjourned for suit to reinstate their union membership. Madden v. Adkins, 4 N.Y. 2d 283, 174 N.Y.S. 2d 633, 151 N.E. 2d 73; Kane v. Supreme Tent. Knights of Maccabees, 113 Mo. App. 104, 87 S.W. 547.

*Doyle Willis,* of Fort Worth, Herbert S. Thatcher, of Washington, D. C. and *Sam Houston Clinton, Jr.,* of Austin for respondents.

Mr. Chief Justice Hickman delivered the opinion of the Court.

Marvin Anderson and five other members of Painters Local Union No. 318 filed this suit against the Local Union its Busi-

ness Agent, W. E. Tatum, and the Brotherhood of Painters, Decorators, and Paper Hangers of America. They alleged that they had been wrongfully suspended from membership in Local No. 318, and that fines were assessed against them because they opposed the relection of Tatum to the position of Busienss Agent. They further alleged that officers of the Local Union conspired with Tatum to punish them. The relief sought was a judgment against the Local union reinstating them and remitting fines and accumulated dues, and against the Local Union, Tatum, and the Brotherhood for damages growing out of their alleged wrongful suspension. The defendants filed pleas in abatement, the grounds of which material here are:

"2. In so far as it [plaintiffs' petition] seeks relief based upon alleged loss of standing as a member of Painters Local 318, since the same if true, is subject to further remedies within the Painters organization * * * and there is no showing that Plaintiffs have exhausted this applicable and available contractual remedy * * * .

"3. In so far as it [plaintiffs' petition] seeks money damages * * * , and also a declaration voiding their conviction, remitting their fines and accumulated dues and reinstating them as members, since if the latter relief be granted they are in effect suing themselves for an alleged dereliction of themselves and their fellow members."

The trial court sustained the pleas on both of the above grounds, and entered judgment dismissing the suit. The Court of Civil Appeals held that the plea in abatement was properly sustained as to petitioners' first cause of action, but that the trial court erred in sustaining the plea in abatement to petitioners' cause of action for damages. 330 S.W. 2d 541.

Both parties filed applications for writ of error. Anderson et al. will be referred to in this opinion as petitioners, and the other parties will be referred to as respondents. The application of petitioners presents the single point that the Court of Civil Appeals erred in holding that they were required to exhaust their remedies within the Brotherhood before pursuing in court their cause of action for reinstatement and remission of fines and accumulated dues. Their position is that when the redress provided by an organization is inadequate, an injured member is excused from the duty of exhausting internal remedies before seeking relief in court. Petitioners' pleadings in the trial court state that they 'had no further recourse within the

Brotherhood; their only effective remedy is in this civil court."
Their pleadings state no facts upon which this allegation is
based, but they argue in their brief in this court that exhaustion
of the remedies provided by the Brotherhood would have in-
volved an unreasonable delay.

The pleadings of the parties taken together show that peti-
tioners appealed the decision of the trial board of the Local
Union to the General Executive Board of the Brotherhood, but
that no appeal was taken from the unfavorable decision of the
General Executive Board to the General Convention of the
Brotherhood, as required by Section 269 of its Constitution.
The only evidence regarding the time involved in an appeal
from the General Executive Board to the General Convention
is that to be found in Section 25 (a) of the Constitution, which
provides that the General Convention shall meet every five years.
Neither the pleadings which were before the trial court when it
ruled on respondents' plea in abatement, nor the evidence pre-
sented at the hearing thereon, indicate the date of the meeting
of the General Convention immediately preceding the accrual
of this cause of action, or the date of the next succeeding meet-
ing.

■ The Court of Civil Appeals held that the trial court properly
sustained respondents' plea in abatement to petitioners' first
cause of action because petitioners did not plead or prove an
excuse for their failure to exhaust their remedies within the
Brotherhood. However, as stated above, petitioners did allege
that thy "had no further recourse within the Brotherhood;
their only effective remedy is in this civil court." In the absence
of a special exception, that allegation was sufficient to raise an
issue as to the effectiveness of the remedies provided by the
Brotherhood. The trial court did not pass upon this point, but
dismissed petitioners' first cause of action solely because peti-
tioners had not taken an appeal to the General Convention, as
required by the Constitution of the Brotherhood. We have before
us, then, the broad proposition of whether an injured member
of a union is required to pursue his remedies within the union
before seeking relief in the courts even though such remedies
may be ineffective.

The general rule governing the question here presented is
stated in an Annotation in 168 A.L.R., pages 1472-1473, as fol-
lows:

"While in some of the cases deprivation of membership rights

and privileges pending appeal to the higher tribunals of the union has been held not to alter the rule necessitating exhaustion of internal remedies within the union (Harris v. Detroit Typographical Union, 144 Mich. 422, 108 N.W. 362), it is pretty generally held that where exhaustion of remedies within the union would amount to a practical denial of justice to the expelled or suspended member, or would be illusory or vain, it will not be insisted upon, particularly where property rights of the member are involved, as a condition to the right to invoke the aid of a court of equity for reinstatement to and restoration of membership." (Citing cases from Alabama, Iowa, Massachusetts, Missouri, New Jersey, New York, and Pennsylvania.)

The cases cited in the Annotation reveal several reasons why the procedure prescribed by an organization has been held to be ineffective, one of which is unreasonable delay.

Two cases later than those cited in the Annotation are Naylor v. Harkins, 11 N.J. 435, 94 A. 2d 825, 829; and Madden v. Atkins, 4 N.Y. 2d 283, 174 N.Y.S. 2d 633, 638, 151 N.E. 2d 73. From the opinion in Madden v. Atkins we quote:

"It is, of course, true that, where timely and adequate relief is provided, an aggrieved member must first exhaust that organization's remedies before seeking redress from a court. * * * But it is equally true, 'the law does not require a man who has been left without means of subsistence through the wrongful action of the union to make continued futile efforts beyond a reasonable time within which to obtain relief.' "

And in Naylor v. Harkins, Supra, there is this language:

"* * * In the light of modern day realities the interests of the members and divisions must be recognized as too vital for impairment without accompanying compliance with the basic requirements of fair play and due process. * * * The notion that members and heir division, summarily ousted by an official of the international, must await review of the legality of their ouster at a convention to be held almost two years thereafter in a distant city and be barred in the interim from seeking judicial relief in any form, simply shocks our sense of justice and we have no hesitancy in rejecting it. The corrective remedy is apparent and lies entirely within the hands of the union; they may and ought set up and fairly administer simple and expeditious internal appeals and thus obviate the need for pre-

liminary judicial intervention and the criticism that union appeal machinery is often too slow and too complex."

■ Respondents emphasize the contractual nature of petitioners' obligation to abide by the union Constitution and to seek redress within the union before going to court. We cannot accept that contention without qualification. Because of the economic consequences of an arbitrary or wrongful deprivation of union membership, members seeking reinstatement should not be required to pursue their remedies within the organization before seeking judicial relief, if such remedies are futile, illusory or vain, or amount to a practical denial of justice. If, as petitioners here alleged, they had no *"effective"* remedy within the Brotherhood, they should have been allowed to proceed to trial. It was therefore error to abate the suit in the absence of proof by respondents that petitioners had a remedy in the Brotherhood, and that it was an effective remedy.

In their application for writ of error, respondents contend that the Court of Civil Appeals erred in holding that, under our decision in United Association of Journeymen, etc. v. Borden, 160 Texas _____, 328 S.W. 2d 739, petitioners were entitled to a trial of their cause of action for damages. We agree that this case is not governed by our decision in the Borden Case, but that conclusion does not result in affirmance of the judgment of the trial court sustaining respondents' plea in abatement to petitioner's cause of action for damages.

■ Generally, an unincorporated association is not liable for an injury to one of its members which is caused by the wrongful conduct of another member or an agent of the association, for the reason that the injured member and the association are regarded as coprincipals and the tortfeasor as their common agent. In the Borden Case, we held that this rule would not be applied to a situation in which an intentional wrong was committed against a member of the union by an agent of the union in the exercise of a power that would ordinarily be used to benefit an injured member as much as any other member of the union, when the membership of the union participated in or otherwise authorized or ratified the wrongful conduct.

Rather, the conduct here involved was from its inception strictly adverse to the petitioners' interest as members of the Local Union. This type of conduct is dealt with in another exception to the general rule, which is that a union may be held liable for the wrongful expulsion of one of its members. Inter-

national Printing Pressmen v. Smith, 145 Texas 399, 198 S.W. 2d 729. This exception is specifically recognized by our opinion in the Borden Case, Supra, wherein we stated:

"There is thus at least one exception to the general rule that a union representative is to be regarded as an agent for all its members in everything he does. The wrongful act will not be imputed to an injured member if committed in the course of an undertaking that is strictly adverse to the latter's interest. This is simply another version of the agency rule that a principal is not liable for the torts committed by his agent while acting adversely to him."

We hold that the alleged wrongful conduct of Tatum and the officers of Local No. 318 should not be imputed to the pttitioners for the purpose of their cause of action for damages, and that it was improper for the trial court to sustain that part of respondents' plea in abatement which was based on that ground.

■ The respondents contend that this case cannot be treated as one involving wrongful expulsion or wrongful suspension because petitioners' suspension was not the result of a definite affirmative act on the part of the Local Union, but was required by the provisions of the Union's Constitution when the petitioners refused or failed to pay their fines after the decision of the General Executive Board became final. We cannot sustain this contention. If the charges which led to the imposition of their fines were wrongfully brought against petitioners, it matters not that their eventual suspension was the result of the operation of provisions of the union's Constitution on the facts as they existed at that time, and not the result of action by the union membership.

Finally, respondents urge that in any event the Brotherhood should not be subjected to liability for the conduct of a handful of officers of one of its local unions in the absence of an allegation that the membership of the Brotherhood participated in or ratified the alleged tort. We regard that contention as controlled by our decision in International Printing Pressmen v. Smith, supra. We held there that where the facts indicated that a local union was the agent of an international union, and was acting within its authority in disciplining a member, the parent organization would be held liable if such conduct were wrongful, even though it had no actual knowledge of the wrongful conduct and did not direct it. The provisions of the Constitution of the Brotherhood of Painters, Decorators, and Paper Hangers of

136

America are similar in detail to the constitutional provisions enumerated in International Printing Pressmen v. Smith. They clearly indicate that Painters Local Union No. 318 is an agent of the Brotherhood, and that the exercise of disciplinary power by the Local Union is within its scope of authority.

The judgment of the Court of Civil Appeals insofar as it reversed the judgment of the trial court sustaining respondents' plea in abatement to petitioners' cause of action for damages is affirmed, and the judgment of the Court of Civil Appeals affirming the judgment of the trial court sustaining respondents' plea in abatement to petitioners' cause of action for reinstatement and remission of fines and accumulated dues is reversed.

Judgment of the Court of Civil Appeals is affirmed in part and reversed in part; and the cause is remanded to the trial court .

Opinion delivered July 13, 1960.

Rehearing overruled October 5, 1960.